UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CORIZON, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:10 CV 2430 DDN |
| ) | |
| WEXFORD HEALTH SOURCES, INC., ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM AND ORDER

This action is before the court on the motion of defendant Wexford Health Sources, Inc. to strike plaintiff Corizon, Inc.'s prayer for punitive damages (Doc. 71) and on the motion of plaintiff Corizon, Inc. to compel production of information and documents. (Doc. 67.) The court heard oral arguments on January 15, 2013.

### BACKGROUND

On December 23, 2010, plaintiff Corizon, Inc. commenced this action against defendant Wexford Health Sources, Inc. On June 12, 2012, plaintiff filed its fourth amended complaint. (Doc. 62.) Both parties are in the business of providing healthcare services for correctional facilities and often compete with one another over such contracts. (Id. at ¶ 19, Doc. 93, at ¶ 19.)

According to the fourth amended complaint, the following occurred. On November 12, 2010, defendant directed its public relations firm CHT Group to create the website http://www.cmsdoesnotcare.com (Website). (Doc. 62, at ¶¶ 6-7.) Defendant dictated the content of the Website, which included information relating to the bidding process for contracts to provide healthcare services for correctional facilities. (Id. at ¶¶ 9-10.) Defendant also included numerous false statements on the Website, many of which purported to be from a "CMS insider" who criticized plaintiff's business practices and ethics. (Id. at ¶ 12.) Plaintiff alleges two claims against defendant: (1) false advertising and unfair competition under 15 U.S.C. § 1125(a); and (2) common law unfair competition. (Id. at ¶ 1.) Plaintiff seeks compensatory damages for corrective advertising costs, attorneys' fees, and investigative fees spent to identify the creator of the Website; an award

of defendant's profits, defendant's unjust enrichment from its conduct, injunctive relief, and punitive damages. (Id. at 6.)

## **RULE 12 MOTION**

Defendant invokes Federal Rule of Civil Procedure 12(f) to have the court strike plaintiff's prayer for punitive damages, arguing that the Lanham Act does not allow recovery of punitive damages. Defendant further argues that Maryland law applies to the common law unfair competition claim, and that plaintiff does not seek compensatory damages necessary under Maryland law to support an award of punitive damages. Additionally, defendant asserts it would be prejudiced by plaintiff's request for punitive damages. (Doc. 71.)

Plaintiff responds that defendant's motion is untimely and that, because Missouri law applies, punitive damages are recoverable in this action. Plaintiff also contends that the relief sought includes compensatory damages and thus a claim for punitive damages can stand even under Maryland law. Finally, plaintiff argues its punitive damages claim would not prejudice defendant. (Doc. 79.)

The relief defendant seeks by this motion is properly considered as challenging the legal sufficiency of plaintiff's complaint to support a claim for punitive damages. This is more properly considered under the aegis of Rule 12(b)(6), to determine whether plaintiff has stated a claim for such relief.

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint. See Carton v. General Motor Acceptance Corp., 611 F.3d 451, 454 (8th Cir 2010); Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001). To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). To meet the plausibility standard, the complaint must contain "more than labels and conclusions." Id. at 555. Rather, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

### **A. Choice of Law**

Before considering whether plaintiff sufficiently states a claim for punitive damages for the common law unfair competition claim, the court must first determine which state law supplies the rule of decision in this case. Defendant argues that Maryland law

controls the common law unfair competition claim. Plaintiff responds that Missouri provides the applicable law.

A federal court must look at the forum state's choice of law rules when hearing a case under diversity jurisdiction. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941); Nesladek v. Ford Motor Co., 46 F.3d 734, 736 (8th Cir. 1995). Missouri state courts apply Missouri law to procedural issues and the substantive law of whatever state applies. Hansen v. Sears, Roebuck & Co., 574 F.Supp. 641, 643 (E.D.Mo. 1983) (citing Kennedy v. Dixon, 439 S.W.2d 173, 180 (Mo. banc 1969)). Missouri courts also use Missouri law to distinguish between procedural and substantive issues. Id. For choice of law purposes, punitive damages under Missouri law are substantive. Reis v. Peabody Coal Co., 997 S.W.2d 49, 70-71 (Mo. Ct. App. 1999).

For determinations regarding the appropriate choice of law on substantive issues, Missouri has adopted the conflict of laws analysis as set forth by the Restatement (Second) on Conflict of Laws, § 145 (1971). Hansen, 574 F.Supp. at 643. The Restatement's "most significant relationship" test provides factors for courts to consider when identifying the state with the most significant relationship: (1) the place where the injury occurred; (2) the place where the conduct occurred that caused such injury; (3) the parties' domicile, residence, nationality, state of incorporation, and place of business; and (4) the state where the parties' relationship is centered, if such a relationship exists. Restatement (Second) of Conflict of Laws § 145(2) (1971). "Where two states have significant contacts and legitimate state interests in the choice of law, we must apply the law of the state whose interest would be more impaired if its policy were subordinated to the policy of the other state." Gilmore v. Attebery, 899 S.W.2d 164, 167 (Mo. Ct. App. 1995).

Because Missouri has expressly adopted the conflict analysis of the Restatement, the court finds its comments particularly instructive. Kennedy v. Dixon, 439 S.W.2d 173, 184 (Mo. 1969) ("We have concluded that we should abandon the inflexible lex loci delicti rule in favor of the rule set forth in s 145 of the Proposed Official Draft of Restatement (Second) on Conflict of Laws."). Further, Missouri courts commonly look to the Restatement commentary to resolve conflict of law issues. See e.g., Accurso v. Amco Ins. Co., 295 S.W.3d 548, 553 (Mo. Ct. App. 2009); Rheem Mfg. Co. v. Progressive Wholesale Supply Co., 28 S.W.3d 333, 344 (Mo. Ct. App. 2000); Superior Equip. Co., Inc. v. Maryland Cas. Co., 986 S.W.2d 477, 481 (Mo. Ct. App. 1998).

Regarding the first factor, the Restatement elaborates on the difficulty of identifying the place of injury in unfair competition cases. Succinctly, the injury is the loss of business, but the effect of the loss is normally most severe at plaintiffs' headquarters or

principal place of business. Restatement (Second) of Conflict of Laws § 145 cmt. f. Because of this ambiguity, the Restatement instructs that the place of injury is less significant in unfair competition cases. Id. Nevertheless, in similarly difficult cases, courts have "focused on the plaintiff's location as the place where an economic injury occurs because it is where the economic impact is felt." Am. Guarantee & Liab. Ins. Co. v. U.S. Fid. & Guar. Co., 668 F.3d 991, 997 (8th Cir. 2012) (bad faith failure-to-settle-claim); Birnstill v. Home Sav. of Am., 907 F.2d 795, 797 (8th Cir.1990) (intentional infliction of emotional distress and tortious breach of covenant of good faith and fair dealing). The parties do not dispute that Missouri is plaintiff's principal place of business and state of incorporation. (Doc. 62 at ¶ 3.) Thus, the first factor weighs in favor of Missouri law.

The Restatement advises that in unfair competition cases, the principle location of the conduct causing the injury, the second factor, should usually be given the greatest weight. Id. However, no showing of the location of conduct has been made. (See Doc. 62; Doc. 72 at 8.)

The third factor concerns the location of the parties. The Restatement provides specific guidance regarding this factor in cases when publication of a matter in several states injures a plaintiff's reputation or causes financial injury, stating that:

> Determination of the state of the applicable law is more difficult when the defamer's act or acts of communication are done in a state other than that of the plaintiff's domicil and when the matter complained of is published in the state of the plaintiff's domicil and in one or more other states to which the plaintiff has a substantial relationship. In this last situation, the local law of the state of the plaintiff's domicil will be applied unless, with respect to the particular issue, one of the other states has a more significant relationship to the occurrence and the parties.

Restatement (Second) of Conflict of Laws § 150 cmt. f. Although the commentary refers to defamation, the Restatement section on injurious falsehood incorporates the defamation section. Restatement (Second) of Conflict of Laws § 151. Plaintiff's unfair competition claim is sufficiently analogous to those torts for purposes of this choice of law analysis. Here, Missouri is plaintiff's principal place of business and state of incorporation. (Doc. 62 at ¶ 3.) The record contains no indication that defendant's acts took place in Missouri. Defendant published the Website, which made it available for viewing in Missouri and all other states. (Id. at ¶ 6.) Thus, the third factors weighs in favor of Missouri law.

Finally, the fourth factor for consideration, the location where the parties' relationship is centered, must be examined. "When there is a relationship between the plaintiff and the defendant and when the injury was caused by an act done in the course of the relationship, the place where the relationship is centered is another contact to be

considered." Restatement (Second) of Conflict of Laws § 145 cmt. e. The parties share a competitive business relationship, and defendant arguably posted the Website in furtherance of that relationship. (Doc. 72 at 11.) However, the center of the relationship cannot be readily ascertained; the parties compete for business in several states. (Id.)

After considering the relevant factors, the court concludes that Missouri is the state with the most significant relationship to this action. Accordingly, Missouri law supplies the substantive rules of decision in this case. 28 U.S.C. § 1652.

**B. Punitive damages under Missouri common law**

Defendant argues that plaintiff's claim for punitive damages should be stricken because an award of punitive damages requires an underlying award of actual damages, which plaintiff does not seek. Plaintiff argues that the attorney fees, investigative costs, and corrective advertising costs it seeks constitute actual damages.

"Under Missouri law, a plaintiff is entitled to punitive damages if the plaintiff proves by clear and convincing evidence that the defendant's conduct was outrageous because of the defendant's evil motive or reckless indifference to the rights of others." Gilliland v. Missouri Athletic Club, 273 S.W.3d 516, 520 (Mo. banc 2009). "Missouri follows the general rule that no punitive damages can be awarded absent an award of actual or nominal damages." Compton v. Williams Bros. Pipeline Co., 499 S.W.2d 795, 797 (Mo. 1973).

Missouri defines actual damages as compensatory in nature and measured by the loss of injury sustained.[1] Stiffelman v. Abrams, 655 S.W.2d 522, 531 (Mo. 1983). Corrective advertising costs are compensatory and "intended to make the plaintiff whole." Adray v. Adry-Mart, Inc., 76 F.3d 984, 988 (9th Cir. 1995). Further, corrective advertising costs are commonly characterized as compensatory damages. See Adray, 76 F.3d at 988 (9th Cir. 1995); Zazu Designs v. L'Oreal, S.A., 979 F.2d 499, 506 (7th Cir. 1992); Punch Clock, Inc. v. Smart Software Dev., 553 F. Supp. 2d 1353, 1359 (S.D. Fla. 2008).

---

[1] Although the court determines that Missouri law controls, Maryland law would similarly permit punitive damages for plaintiff's common law unfair competition claim. See Rite Aid Corp. v. Lake Shore Investors, 471 A.2d 735, 743 (1984) (requiring an award of compensatory damages to recover punitive damages); Jones v. Malinowski, 473 A.2d 429, 435 (1984) (stating that tort plaintiffs may recover "damages that are affirmatively proved with reasonable certainty to have resulted as the natural, proximate and direct effect of the tortious misconduct").

In its complaint, plaintiff seeks an award of corrective advertising costs. (Doc. 62 at 6.) Defendant argues that Corizon waived its right to actual damages in a letter from plaintiff's counsel, dated July 5, 2012, which states:

> As we discussed during our June 29 phone call, Corizon is not seeking damages in the form of lost profits, goodwill or reputation in this action. Rather, as reflected in the WHEREFORE clause of the Corizon's Fourth Amended Complaint, Corizon is seeking damages in the form of the attorney's fees and costs it expended in identifying Wexford as the creator of the sham Website, costs for corrective advertising and/or an order directing Wexford to engage in corrective advertising, permanent injunctive relief barring Wexford from creating false, misleading and deceptive Websites about Corizon and making false statements about Corizon, an award of treble damages, punitive damages, prejudgment interest, and costs and reasonably attorney's fees expended in this action, and such other and further relief as the Court deems just and proper.

(Doc. 72-8.)

The letter expressly reserves the right to seek corrective action costs. Accordingly, the court finds that plaintiff's claim for compensatory damages for common law unfair competition is sufficient to support its claim for punitive damages.

**C. Punitive damages under the Lanham Act**

Plaintiff seeks punitive damages for defendant's alleged violation of the Lanham Act, 15 U.S.C. § 1125(a).[2] Defendant contends the Lanham Act does not allow any award for punitive damages.

The Eighth Circuit has determined that the Lanham Act provides equitable relief, such as an injunction, and not a remedy at law, like punitive damages. Minnesota Pet Breeders, Inc. v. Schell & Kampeter, Inc., 41 F.3d 1242, 1247 (8th Cir. 1994); Metric & Multistandard Components Corp. v. Metric's, Inc., 635 F.2d 710, 715 (8th Cir.1980).

Accordingly, defendant's motion to dismiss plaintiff's claim for punitive damages under the Lanham Act is sustained.

**MOTION TO COMPEL**

Plaintiff seeks to compel production of information about internet activity other than the website alleged as defamatory in its Fourth Amended Complaint and to defendant's financial information. (Doc. 67.)

---

[2] In its response memorandum regarding defendant's motion to strike, plaintiff does not address defendant's arguments concerning the punitive damages claim under the Lanham Act. (Doc. 79.)

**A. Internet activity**

Defendant objects to plaintiff's discovery requests regarding internet activity in addition to the Website, arguing that evidence of other internet activity is irrelevant. Plaintiff argues that its requests are within the parameters of relevance as defined by the federal rules that apply to civil actions.

Plaintiff argues that CHT created another website for defendant concerning a merger between plaintiff and PHS Correctional Healthcare, Inc. as indicated by the depositions of Marlin Collingwood, the president of CHT. Collingwood testified that defendant asked CHT to create another website regarding the merger, which was established but taken down after the merger's completion and that defendant provided the content and came up with the idea. (Doc. 68-2.) He later testified that he did not believe the website was publicly posted. (Doc. 74-6 at 33.) Plaintiff also deposed three Wexford officers: Mark Hale, CEO; Dan Conn, COO, and Darius Holmes, Senior VP of Strategic Development. When questioned regarding the merger website, Conn responded that he had no knowledge, and Hale and Holmes were uncertain about whether the website was ever publicly posted. (Docs. 74-2, 74-3, 74-4.)

Plaintiff further argues that three comments on plaintiff's Yahoo Finance webpage were posted under the username "jgelfield". The postings originated from an IP address used from a Hampton Inn located in Pennsylvania. (Doc. 74-6 at 20.) The first two postings concerned the merger, and the third posting contained solely a link to the cmsdoesnotcare.com website. (Id. at 18-20.) Collingwood could not recall whether he created the postings, but he testified that he had used the IP address at the particular hotel. (Id. at 17-21.) He further testified about discussion between CHT and defendant concerning generating traffic to the Website and that posting website links where they are likely to be seen is common practice in his business. (Id. at 17, 27.)

Plaintiff also argues that an article on the Baltimore Sun website referred to the Maryland Department of Corrections and its contract for health services with a link to the cmsdoesnotcare.com website. Collingwood could not recall whether CHT linked the article to the Website but declined to testify that CHT did not. (Id. at 25-26.) Conn, Hale, and Holmes denied any knowledge regarding any of the postings. (Docs. 74-2, 74-3, 74-4.)

Regarding the aforementioned internet activity, plaintiff seeks to compel production of documents in response to interrogatories Nos. 8 and 9 and requests for production Nos. 17 and 18. These discovery requests are:

> Interrogatory 8: Identify any other website besides the Website at issue in this case that you have created, authored, or maintained regarding,

mentioning, or related to [plaintiff]. For each website identified, please identify the URL of the website, the dates that the website has been or was active, and the person or entity that maintains or maintained the website.

Interrogatory 9: Identify any postings or statements you have created or authored on any internet website, forum, message board, or blog, commenting section, or other similar internet interactive communication website during the Relevant Time Period regarding [plaintiff]. For each posting or statement, identify the specific internet interactive communication website, the person that made the post or statement, and the date and full text of the posting or statement."
(Doc. 68-9.)

Request for Production 17: All documents during the Relevant Time Period relating to any other website besides the Website at issue in this case that [defendant has] created, authored, or maintained regarding [plaintiff].

Request for Production 18: All documents during the Relevant Time Period relating to any postings or statements you have created or authored on any internet website, message boards, or blogs during the Relevant Time Period regarding [plaintiff]."

(Doc. 68-8.) Defendant objected to these requests. (Doc. 97-10 at 12-13.)

Defendant argues that the only relevant internet activity is the Website, stating that plaintiff failed to allege additional internet activity in its complaint and that discovery should not be used to develop new claims.

Fed R. Civ. P. 26(b)(1) sets forth the scope of discovery, stating that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the claim or defense of any party." Fed. R. Evid. 404(b) prohibits the admission of evidence of criminal activity or other wrongdoing "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" but permits the admission of such evidence for other purposes.

According to the complaint, plaintiff seeks, among other forms of relief, punitive damages and permanent injunctive relief. (Doc. 62 at 6.) As stated above, for an award of punitive damages under Missouri law, plaintiffs must demonstrate that "the defendant's conduct was outrageous because of the defendant's evil motive or reckless indifference to the rights of others." Gilliland v. Missouri Athletic Club, 273 S.W.3d 516, 520 (Mo. banc 2009). "To show entitlement to injunctive relief, a petition must plead facts that show (1) the plaintiff has no adequate remedy at law, and (2) irreparable harm will result if the

relief is not granted . . . Irreparable harm is established if monetary remedies cannot provide adequate compensation for improper conduct." Glenn v. City of Grant City, 69 S.W.3d 126, 130 (Mo. Ct. App. 2002).

The court finds that evidence for conduct similar to the posting of the Website is relevant for purposes other than demonstrating propensity, including pursuing punitive damages and injunctive relief. See Menefee v. ChoicePoint, Inc., 2009 WL 174134, *4 (E.D. Pa. 2009) (stating that evidence showing whether the conduct involved repeated actions or was an isolated incident is relevant to punitive damages claims); Bose Corp. v. Silonsonnic Corp., 413 F. Supp. 2d 339, 346 (S.D.N.Y. 2006) (relying on admissions of similar conduct to award injunctive relief); see also State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003) ("[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct."). Therefore, plaintiff's discovery requests regarding additional internet activity comply with Fed. R. Civ. P. 26(b)(1) and Fed. R. Evid. 404(b).

Defendant also argues that information related to the alleged second website is irrelevant because it was not publicly posted and cannot be actionable. The fact that the website was not publicly posted may prevent plaintiff from bringing a separate unfair competition claim regarding the website. However, the lack of publicly posting the website does not make defendant's planning and creation of that website irrelevant to prove defendant's otherwise actionable activities, and for purposes of punitive damages and injunctive relief.

Accordingly, plaintiff's motion to compel production of documents in response to interrogatories Nos. 8 and 9 and production of information in response to requests Nos. 17 and 18 is sustained.

**B. Financial Information**

Plaintiff claims entitlement to punitive damages and seeks evidence of defendant's financial worth relating to that claim. Plaintiff seeks to compel one deposition and further seeks to compel production of documents in response to Corizon's Third Requests for Production of Documents and production of information in response to Corizon's Third Set of Interrogatories. These discovery requests are:

> Deposition: A representative or representatives of [defendant] having the most knowledge regarding . . . [t]he current net worth and the current value of the total assets of [defendant], as well as the year-end net worth and total assets of [defendant] for 2011.

(Doc. 68-15.)

> Request for Production 1: All documents identified, referred to, or utilized to answers Plaintiff's Third Set of Interrogatories directed to you.
>
> Request for Production 2: All documents reflecting or relating to your financial condition, including but not limited to, balance sheets, profit and loss statements, income statements and tax returns.
>
> Request for Production 3: All documents reflecting or relating to your net worth, including but not limited to net worth statements.
>
> Request for Production 4: All documents reflecting or relating to your assets and liabilities.

(Doc. 68-16.)

> Interrogatory 1: State your current net worth, as well as year-end net worth for 2011.
>
> Interrogatory 2: State the current value of your total assets and liabilities, as well as the year-end value of your total assets and liabilities for 2011."

(Doc. 68-17.) Defendant objected to these requests. (Doc. 68-18.)

Defendant argues that because plaintiff is not entitled to seek punitive damages, plaintiff seeks merely to harass and that producing the requested discovery would allow plaintiff access to confidential business information, which it would use for a competitive advantage. However, as stated above, plaintiff may seek punitive damages.

During oral arguments, both parties agreed to limit the availability of the requested information to the counsel of plaintiff and defendant. Accordingly, an order reflecting this agreement is hereby entered.

## VI. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motion of defendant Wexford Health Sources, Inc. to strike plaintiff Corizon, Inc.'s claim for punitive damages, considered by the court a motion to dismiss under F.R.Civ.P. 12(b)(6), (Doc. 71) is sustained as to plaintiff's claim under the Lanham Act, but denied as to plaintiff's common law claim.

**IT IS FURTHER ORDERED** that the motion of plaintiff Corizon, Inc. to compel production of documents in response to Corizon's First Requests for Production 8 and 9

and to compel production of information in response to Corizon's First Set of Interrogatories 17 and 18 (Doc. 67) is sustained. Unless otherwise ordered or agreed to by the parties, defendant shall provide the requested information within 14 days of this date.

**IT IS FURTHER ORDERED** that the motion of plaintiff Corizon, Inc. to compel production of documents in response to Corizon's Third Requests for Production, to Corizon's Third Set of Interrogatories, and related deposition (Doc. 67) is sustained, upon condition that the information provided remain confidential except to the counsel of the parties. Unless otherwise ordered or agreed to by the parties, defendant shall provide the requested information within 14 days of this date.

　　　　　　　　　　　　　　　　　　/S/   David D. Noce
　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

Signed on March 4, 2013.